## Case No. 7,905.

### KNOX v. DEVENS.

[5 Mason, 380.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1829.

CUSTOMS DUTIES — BOND FOR DUTY — REMEDY AGAINST REAL OWNER—DEBT PAID BY SURETY—SURETY'S REMEDY AGAINST OWNER OF GOODS.

1. By the act of congress of 1799, c. 128 [1 Story's Laws, 573; 1 Stat. 627. c. 22]. consignees are authorized to enter goods, and give bonds for the duties. In such case the United States have no remedy over against the owner of the goods, for whom the consignee acts as agent or trustee, if the duties are not paid.

2. If a surety for a consignee on a custom-house bond pays the debt, he has no remedy against the owner for the amount, if the latter did not request the surety to sign the bond; but the remedy for the surety is against the consignee only.

[Cited in Du Peirat v. Wolfe, 29 N. Y. 441.]

Assumpsit upon the money counts. The parties agreed upon the following special statement of facts:

Mr. Thomas Battelle of the island of St. Croix, having sold some property for the defendant, Mr. [Richard] Devens, on a credit, remitted the proceeds, as he collected them, in bills of exchange and the produce of the island. On the last of July, 1826, no opportunity offering for Boston, he shipped 16 puncheons of rum on board the schooner Rampart, Capt. Morgan, bound for New York, and consigned the same to Messrs. G. & H. Lewis for account of Mr. Devens. There was no previous authority thus to consign, and the house of G. & H. Lewis were strangers to Mr. Devens. On the arrival of the rum in New York, the latter part of August, the same was stored by the Messrs Lewis in the custom-house stores on the 29th of August; but of its arrival they gave no notice to Mr. Devens. On the 7th of September, Mr. Devens wrote to the Messrs. Lewis as follows: "Mr. T. Battelle of St. Croix has advised me, that he shall ship, on my account, to your address, 16 puncheons rum per schooner Rampart. I write the present for the purpose of requesting, that on the receipt of the rum you will dispose of it to the best advantage, either for cash or credit. I wish you to guarantee the debt if you sell on credit, and remit me the net proceeds as soon as possible." To which letter the Messrs. Lewis replied on the 9th September as follows:

"Sir,—We have received your favour of the 7th, and will, as you direct, dispose of your 16 puncheons of rum as soon as practicable. The article is very dull at present, but we expect there will be some demand in a few days. We could not sell for cash without a great sacrifice, but will guarantee the debt,

and hope to send you the sales very shortly. With a tender of our best services here, we remain respectfully, &c."

"Boston, 27th December, 1826. Messrs. G. & H. Lewis, Gentlemen,—Yours of the 9th of September is the last advice I have from you respecting the rum sent to you by Mr. Battelle. I hope, that before this time you have been able to dispose of it, and shall be obliged by your informing me of the result. Respectfully yours. R. D."

"New York, 2d January, 1827. Mr. Richard Devens, Sir,—We have duly received your favor of the 27th ult. and now hand you account sales of your rum, received per schooner Rampart. We did suppose they had been sent some time since. We were compelled to give a long credit on the rum, as the article was at that time of very difficult sale. Respectfully we remain your obedient servants. G. & H. Lewis."

"Boston, 5th January, 1827. Messrs. G. & H. Lewis, Gentlemen,—I have received yours of 2d inst. with account sales of rum per Rampart, in which there are others beside myself interested. I will therefore thank you to deduct interest, and remit me the net amount, which will enable me to settle the account. Respectfully yours. R. D."

"Boston, 13th February, 1827. Messrs. G. & H. Lewis, Gentlemen,—I wrote you on the 5th, respecting the net proceeds of 16 puncheons rum you received per Rampart, and requested you to remit me the net proceeds, but have never received an answer to my letter. On receipt of my present communication, please pay over to Messrs. Goodhue & Co. the amount due me, deducting interest. Yours respectfully. R. D."

The said rum lay in the custom-house stores till the 18th of September, 1826, when the same was entered at the custom-house in New York, (the form of entry saying nothing of the ownership, which, on articles paying a specific duty, is not required at New York,) and the bill of lading and invoice presented at the same time at the custom-house; both stating, that the rum was shipped for account and risk of R. Devens. G. L. Lewis, one of the house of G. & H. Lewis, as principal, and the plaintiff, Thomas Knox, as his surety, gave bonds for the duties on the rum, amounting to $705.60; one half payable in six months, and one half in nine months. Before either bond became due, G. & H. Lewis failed, and the plaintiff, Knox, as surety, was called upon by the collector, and paid the bonds, one half on the 19th of March, and one half on the 19th of June, 1829, being the days next after the said duties were due. On the 2d of January, 1827, G. & H. Lewis sent to said Devens an account sales of said rum, a copy whereof is hereto annexed, but they have never paid the balance thereof to the said Devens. On the 17th of January, 1827, G. & H. Lewis made an assignment to T. Knox, C. J. Johnson, and J. A. Johnson, to secure the pay-

ment of bonds due to the United States, a copy of which is annexed. Upon this assignment, the assignees, it is said, have realized but $2728.17, as per account annexed, and they believe there is very little probability of any thing more being received, many of the debts assigned being good for nothing, and those against Battelle, Gray, and T. Battelle, having been compromised by taking T. Battelle's six notes of $1000 each, payable in one to six years without interest, the first of which notes became due on the 1st of January, 1829, and only $500 has been paid upon the same, and it is doubtful if any more will be received from him. It is also agreed, that said Devens and Knox were wholly unacquainted, and that Devens never requested him to sign, nor knew of his signing, the bonds given to secure the duties on the rum. Nor did said Devens ever know it till he was called upon immediately before the commencement of the present action.

Sales of 16 Puncheons Rum, D. per Schooner Rampart, Morgan, Master, from St. Croix, Account of R. Devens, of Boston.

| | Punch'a. | Net gls. | Price. | |
|---|---|---|---|---|
| Sept. 23. By Stanton & Suydam, 10 mo. 3d pf. | 5 | 533 | 70 | $373 10 |
| Sept. 23. By Herlman & Nash, 6 mo. 3d pf. | 7 | 752 | 68 | 511 36 |
| Sept. 29. By J. B. H. Odiorne, 10 mo. 3d pf. | 4 | 425 | 70 | 297 50 |
| | 16 | 1710 | | $1181 96 |

Charges.

| | | |
|---|---|---|
| Aug. 29. To duties on 1680 gals. 3d pf. at 42. | | $705 60 |
| bond & permit $1.20, advertising $2.50, labor $2.44 | | 6 14 |
| storage $4, cooperage $2.72 freight $64, lighterage $4. | | 6 72 68 00 |
| insurance on $480, at one and a quarter per cent. —half per cent. commission | | 8 40 |
| commissions and guarantee, 5 per cent | | 59 10   853 96 |
| net proceeds to credit of R. Devens, due 4th June, 1827 | | $328 00 |

Errors etc. excepted.
New York, 30th September, 1826.
(Signed)              G. & H. Lewis.

Webster & Peabody, for plaintiff.

This is a case in which the foreign correspondent of the defendant, within the scope of his orders, shipped on account and risk of the defendant, certain foreign goods, to G. & H. Lewis of New York. Neither the defendant nor the Lewises had any previous knowledge of the intention of the foreign correspondent to make the shipment. But after it was made known to them, both parties approved of and confirmed the consignment; and the Lewises accepted and entered the goods, and Devens gave them orders to dispose of them. On the arrival of the goods, and their being entered by the Lewises at the custom-house, one of them became principal, and on their request the plaintiff became surety, on bonds for the payment of the duties to the United States. Before the bonds became due the Lewises failed, and the plaintiff as surety was compelled to pay them. He now seeks a remedy by a suit against Devens, to recover the amount of the bonds, as money paid to his use, at his request. To sustain his claim, the plaintiff must show, that the amount of the bonds was paid to the use of Devens, and at his request, or on the request of some authorized agent for him. And 1. If upon the whole case it appears, that Devens was the importer of the goods, or that by the act of importation he became liable for the duties thereon; then, whoever paid the duties on the importation, paid them for the benefit or use of Devens. And 2. If such payment was made necessarily by a surety, who became surety at the request of Devens's agent, it was made on Devens's request.

1. Was Devens the importer? or was he, by the act of importation, a debtor to the United States for the duties accruing on the importation? Devens was the owner of the goods, when shipped from St. Croix by Battelle. The shipment was made in pursuance of Battelle's authority; and from the moment that the goods were on board, till they arrived at New York, and were entered and sold, and the proceeds realized by Devens, they were at his risk. The Lewises were as ignorant of the intended shipment to them, as Devens was. Neither had notice of it till the goods arrived at New York, and notice of the shipment was received by Devens. When that was done, both approved of the shipment on the terms of it. This appears, by the Lewises' receiving and entering the goods, and by Devens's giving them orders for their sale. On their arrival it was in the power of Devens to have removed them into other hands, or to have ordered them to Boston, into his own stores; but he preferred to confirm the consignment to the Lewises, and order them to sell them for his account. Who, then, was the importer, and as such incurred the liability to pay the duties on their importation? Was it Devens, by whose procurement they were brought into the country? or the Lewises, who knew nothing of them, till they arrived in New York, to their address, on account and risk of Devens?

In the case of U. S. v. Lyman [Case No. 15,647], the general doctrine was discussed at length; and the decision in that case has generally been approved. If it has sometimes been questioned, it has never been over-ruled, and may be now referred to as a decision, with which this court is satisfied, and which no one has chosen to call in question before the only tribunal, which has the power of controlling the decisions of this court. In that case it was decided, that by the act of importation, the importer incurred a personal debt to the government for the duties; and that a bond given for that debt,

by other persons, is not an extinguishment of the debt, but only collateral thereto. U. S. v. Lyman [supra]. By the act of importation, then, the importer incurred a debt to the United States, which Knox, the plaintiff, was compelled to pay, by force of the bond. If Devens was the importer, that debt was paid for him, and its payment relieved him from a liability to the United States, which he would still be liable under, but for the plaintiff's payment of the bonds in question. None but Devens or the Lewises could be the importer. Which of them was it? Devens, by whose procurement the goods were introduced into the country? or the Lewises, who knew nothing of them till their arrival in New-York, to their address, on account of Devens? By our statutes, the owner or consignee, or in their absence, their agents or factors, are the only persons entitled to enter and bond the goods; he who enters and bonds, is not, therefore, ipso facto, importer. By referring to the common definition of terms, we shall find, that he who causes the thing to be imported, is the importer. But he may be a citizen and resident of a foreign country, and beyond the reach of our laws. It is for this reason, that by our statute the consignee, as well as the owner, is made liable for the duties; and by this provision the government are secure, that if the goods are received into the country, some one will be found, within the jurisdiction of the government, liable for the duties. The owner is the immediate debtor; and the consignee seems to be a substitute, when the owner is a foreigner, residing abroad; or like a bondsman collaterally liable, if the owner be a United States citizen, residing at home. The alternative of owner or consignee is only provided, that some person may be always found under the jurisdiction, liable for the duties. The owner or importer is still liable, and the consignee is added only as a substitute, if the owner be not within the reach of the government's process: or as a collateral surety, if the owner reside here. It is difficult to conceive, that the foreign merchant is the importer, if he come with his goods, consigned to his own order, and after arrival and before entry, consign them to a merchant here,—and not the importer, if he remain at home, and send his written order with the goods, consigning them to a merchant here, who knows nothing of the shipment, till the arrival of the goods. In England the duties are usually paid on the entry of the goods. When by accident or mistake the goods are delivered without the payment of the duties, it becomes necessary to resort to those who incur the debt by the act of importation. And they are always considered liable till the duties are paid; and every one who is owner or interested in the goods, is so liable. And if the owner reside abroad, the factor within the kingdom, having no interest but his commissions, is liable. And

if several are jointly interested, the crown may recover the duties of any one interested. Man. Prac. 203. Skinner, for himself and four others, made an importation, and entered the goods; and by mistake received them without paying the customs. Skinner then became bankrupt, and his whole effects were distributed. On information, the whole five interested were held debtors to the crown, and they all remained liable, till the duties were paid. Attorney General v. Stranyforth, Bunb. 97. If the owner, being within the government, by the act of importation is liable, and becomes the principal debtor for the duties, it only remains to ascertain who was the owner of the goods in question, at the time of their importation. They were purchased with the funds of Devens, and by his procurement, and in pursuance of his orders shipped to this country. They came on his account and risk; and until their being landed and entered, and bonded, it does not appear that any other person had any interest in, or control over them. It does not appear, that the Lewises had any knowledge of the shipment till the arrival of the goods, or any interest in them at any time, beyond their commissions. On their arrival, both before and after their being entered and bonded, it was at Deven's option to take the goods into his own possession, or consign them for sale to any other house. But he chose to give orders to the Lewises to sell them for his account. Devens appears, therefore, to have been both the sole owner and importer. By the act of importation he became the debtor of the government, for the duties. The plaintiff by paying them discharged a debt to Devens, and therefore paid the money to his use. If it were paid at his request, or at the request of any one authorized to act for him, the plaintiff's title to recover is made out. The Lewises were the agents of Devens, acting in that capacity for a commission. They received the goods for his account, at first by the order of his foreign agent, and afterwards entered and sold them, by his own order. If one requests another to enter and bond goods for him, inasmuch as he knows there must be a surety, by this act he impliedly directs his correspondent to request some one to become surety, and he who so becomes surety, and is thereupon obliged to pay the duties, does it by the request of the owner, to relieve him from a debt to the government, which he cannot evade without payment.

The object of our government, in making the existing laws, is to secure, in all events, the payment of the duties on importations; and their payment being secured, to give every possible facility and indulgence to the merchant. If the importer, by the act of importation, incurs a debt to the government, he must remain liable for that debt till it is paid; and he who pays it, pays money for the relief and to the use of the importer.

If the doctrine be established, that the consignee of one of our own citizens, residing at home, is the sole importer, and alone becomes liable for the duties, a door for fraud will, by such a decision, be opened, as wide as could be wished for unprincipled speculation; and the government may be indefinitely defrauded of its revenue. If a merchant in any other place, have a debtor in New York, with credit enough to enter goods, and give a bondsman equally responsible with himself, but without property to pay his debts, that creditor may carry a cargo to St. Thomas, and consign it to a known correspondent of his delinquent debtor, and order the proceeds to be invested in produce and shipped by the first vessel to the United States, after he has found that such vessel will go to New York. He will thus be secure, that the return cargo will go to his insolvent correspondent in New York, without his having ordered it, or given any directions to that effect. After it is entered and bonded, he may take it into his own hands, and give his insolvent debtor credit for the duties, and thus securely transfer his debt to the United States. Such speculations may be safely made, and doubtless will be, if the existing laws are found so far to fail of their object, that correct judicial constructions of them will encourage such adventures. This is only one case, in which fraud might be practised under such a decision as the defendant's counsel contend for; but many others might easily be contrived by common ingenuity.

Mr. Welsh, for defendant.

The plaintiff in this action claims of the defendant to be reimbursed by him the amount of duties, paid as surety on certain bonds given to the United States, by Gabriel Lewis, of New York, as principal, and the plaintiff as surety, the conditions of which were, that the said Lewis should pay to the United States the duties accruing on the importation of sixteen hogsheads of rum, shipped and consigned to G. & H. Lewis, by Thomas Battelle, of St. Croix, on account of the defendant, who was the owner of the rum. Before the bonds became due, the Lewises failed, and when due, were paid by the plaintiff as surety. It is urged, that the defendant is bound to refund the amount of the duties thus paid, because he was the importer of the goods, and that, by the act of importation, he became liable for the duties, and that whoever paid the duties, paid them for his benefit or use. Suppose it be true, that the defendant, being the owner of the goods, was liable for the duties on their importation, and so continued until they were entered, and the duties secured by the bond given by Lewis, as principal, and Knox, as surety; from that moment, his personal liability to the United States, and the lien, which until then had attached on the goods, were dissolved. The reception of the bonds by the United States was a full satisfaction of any claim, which

by statute, or general principles of law, the United States had against the person of the owner, or importer, or the goods; and of course, if the bonds had not been paid, the United States could not have recovered the amount of duties from the owner of the goods. The plaintiff relies on the authority of the case of U. S. v. Lyman [Case No. 15,-647] for the support of his first position, that a bond given to the United States is not an extinguishment of the debt accruing to the United States, on the importation of merchandise. It is of no importance to ascertain, how far the United States has, if any, cumulative remedies for the collection of debts, contracted with them by the importation of merchandise, as it is certain, that they are not transferable to a surety in a bond given to secure such duties. But it is denied, that the defendant, although the owner, was the importer of the rum, or that, in that character, he was ever personally liable for the amount of the duties, which became due to the United States on its importation. It will be seen, in the 128th chapter of the revenue act of 1799 [1 Story's Laws, 573; 1 Stat. 627, c. 22], that the owner, or consignee, or in case of his absence, or sickness, his factor, or agent, are the only persons, to whom the law allows a credit for the duties, to be given at the custom-house. Upon which, Judge Story inquires, in U. S. v. Lyman [supra], "From whom, then, does the debt accrue? And he answers, "Beyond all doubt from the importer, be he the owner, or the consignee of the goods." It is undeniable, then, that the debt accruing to the United States on the importation of the sixteen hogsheads of rum, was a debt contracted by the importers, the Messrs. Lewis, and was never the debt of the defendant, because he was absent from New York, and a resident merchant of Boston, at the time of the importation of the rum into the former place, was not consignee, nor, in any legal sense, the importer. The provisions of the law are positive, and it is against all rules of construction, to give to them a different signification, by supposing an intention in the legislature, at variance with the language used. The reason given by Judge Story, in the case of U. S. v. Lyman, for his opinion, that the debt, which accrued to the United States on the importation of the teas, was not extinguished by the bonds given to secure the payment of the duties, was, that they were the bonds of a purchaser, who had no interest in them at the time of the importation, and could, therefore, be considered only as collateral security, and not an extinguishment of the debt. This makes it a different case from the present. But whether the Messrs. Lewis, or the defendant, be considered the importers of the rum; in either case, the claim, which the United States had on the latter, as owner, at the time of its importation, was extinguished, and became merged in the bond, which Lewis, as principal, and Knox, as surety, gave to

the United States, for those duties. In the case of U. S. v. Astley [Case No. 14,472], it is virtually decided, that the United States, by taking a bond to secure the duties on goods, extinguished the debt, for which it was given, and no distinction is made between the bond of a stranger, owner, consignee, or importer. In Tom v. Goodrich, 2 Johns. 213, it was decided by Justice Thompson, that the giving of a bond to secure the payment of duties on merchandise, was an extinguishment of the debt to the United States for those duties.

It is clear, from all the cases, in which this question has presented itself, that the acceptance of the bond is an extinguishment of the simple contract debt, due to the United States for the duties, inasmuch as it is a security of a higher character. The liability, then, to pay the debt accruing to the United States on the importation of this rum, was on the Lewises; and the plaintiff, the surety in the bonds given to secure this debt, must be considered as having incurred his liability on their account, on their credit, and at their request; and it is to them, that he must have recourse for the reimbursement of the money, which he has paid to the United States, as surety on their bonds. Indeed it is evident from his conduct that he had incurred this liability on their sole credit; for he takes from them an assignment of all their effects in January, 1827, to secure these and other bonds, in which he had become their surety; he gives no notice to the defendant, that he should hold him responsible, as the owner of the goods, for the amount he might be called on to pay, in case of the Lewises' default. The defendant was a stranger, and unknown to him, as owner, until after the failure, of Messrs. Lewis, and not until he had ascertained, that he was not secured by the property assigned to him, did he give the defendant notice, that he held him responsible for the amount of duties on the rum, which he had paid, Where a party is called on to pay money in consequence of another, having paid money, as his surety on a bond, the execution of the instrument must be proved, and it must be shown, that he signed the bond at the request of the principal. All the facts in the case prove, that the plaintiff became surety in these bonds at the request, and for the accommodation of the Lewises, who held the goods, on which the duties accrued, or the proceeds of them, as a fund, with which they could pay the bonds. No case has been shown, or can be found, of an implied promise to indemnify a surety, except by persons, at whose request the surety executed the bond, and who were parties to it. It has never been extended beyond the parties, who executed the instrument. In the case of Tom v. Goodrich, before cited, which is the case of a surety, who signed a bond for duties for one of a firm, as principal, on merchandise imported by the firm, Justice Thompson says, the law does not imply a promise by all the persons, who may be benefited in consequence of payment by a surety, but only by the person, whose debt is discharged. Chief Justice Kent, in the same case, observes, "The plaintiff executed the bond as his surety, and cannot charge any other person as principal. There is no privity between the parties, but what arises from the bond. It would be refining upon the doctrine of implied assumpsits, and going beyond every case, to consider the surety in a bond as having, by that act, a remedy at law against other persons, for whom the principal in the bond may have acted as trustee."

The cases cited by the plaintiff's counsel from the Exchequer Reports, and their observations upon them, have no application to questions arising on bonds given to the United States, as security for duties on goods imported into this country. The laws of Great Britain require, that the duties on goods entered for consumption, should be paid in money. No bonds are taken in that case; the system of credits for duties, which is almost universally practised in this, is unknown in that country. In the cases cited by them, the lien on the goods for the duties attached to them, and the claim against the importers, who were the joint owners, was unimpaired, and it was merely decided, that the crown could recover the duties of either of the joint owners. There is no doubt, that this court, under the same circumstances, would have made a similar decision; but this is not the case under consideration. There can be no such fraud practised on the government, as the plaintiff's counsel apprehend from the establishment of the principles, on which the defence in this case is predicated. It is true, that a solitary instance might occasionally occur, of a merchant's consigning goods to his insolvent debtor, and inducing him to enter them, as consignee, or importer, give his security for the duties, and charge his creditor, the owner of the goods, with those duties, and in that way secure his debt; but to effect such an object, there must be the co-operation of another party, the surety, and there must be a risk incurred by the creditor, which he would not willingly do, of placing more property under the controul of his debtor; and above all, it would be a fraud on the government, which could not fail of being discovered. Besides, consignees being generally commission merchants, and not so much exposed to the casualties of trade, would afford better security to the government for the payment of the duties on goods consigned to them, than merchants of other classes. The law has existed a long time, and if such frauds had been practicable under colour of its provisions, they must have been known, as they must in all cases have occasioned losses to the government, which it is well known have been very small. The inconvenience and losses in trade, which would arise from these lurk-

ing liabilities, which the plaintiff's counsel contend for, would be far more formidable evils, than any, which the government would experience from a different doctrine. If the law be defective in this respect, the remedy must be by legislation, and not by construction.

S. Hubbard, on the same side.

There is no privity of contract between those parties; and if any claim, therefore, exists on the part of the plaintiff, it arises from the legal liability of the defendant. Now to maintain, that there is such a legal liability, the plaintiff must himself satisfy the court, that the defendant was personally liable to pay these duties. And the plaintiff, aware of this, asserts, that the defendant was importer of the goods; but the facts warrant no such assertion. The rum was shipped by Battelle, and consigned to G. & H. Lewis, without the order or knowledge of the defendant. It was actually imported into New York, and the consignment accepted by the Lewises, without his knowledge. By receiving the consignment, the Messrs. Lewis became the importers and as such legally liable to the United States, and not the owner; for the statute, in our judgment, does not make both owner and consignee as such, responsible. In this case, the defendant residing in another state is to be considered as a foreigner (and citizens of other states are often so treated, in their commercial transactions. The General Smith, 4 Wheat. [17 U. S.] 438; Buckner v. Finley, 2 Pet. [27 U. S.] 586); and as an absent foreigner, he was not liable for the duties. The legal liability, therefore, was incurred by the Messrs. Lewis, and not by the defendant. For whom, then, was the plaintiff surety? Not for the defendant. The incidental benefit accruing to the defendant, does not raise a cause of action against him. But the plaintiff was surety for only one of the Messrs. Lewis; he had then no claim even on them. It was not the individual Mr. Lewis, that signed the bond, who was the agent of the defendant; but the Messrs. Lewis were joint agents. If the plaintiff, then, had no claim on the agents of the defendant, surely he has not on the defendant, of whom he was wholly ignorant, when he signed the bond; and the cases of U. S. v. Astley and Goodrich v. Tom, cited by Mr. Welsh, and the case of Sluby v. Champlin, 4 Johns. 461, clearly maintain this position of the defendant.

Once more, no right of action exists in this case, because the plaintiff has paid the Messrs. Lewis, his agents, the amount of this bond. It will be recollected, that the goods were consigned by Battelle, without the knowledge of the defendant. When he heard of the consignment, he gave orders to sell for cash, or guaranty the sales. The Messrs. Lewis accepted the consignment under these instructions, and they had, therefore, no authority to contract any debt for the defendant, nor to bind him personally, for liabilities incurred by them, in entering, storing, and disposing of the goods; and having by the sale received the proceeds of the goods under their own guaranty, before their insolvency, no debt existed against the defendant, at the time when the bond was paid. Of what avail would be the directions to sell for cash, and under guaranty, if the owner of goods, notwithstanding, may be charged with every debt of every person employed by the commission merchant in relation to his goods. Such a consequence would be much more detrimental to the intercourse among merchants, and eventually more injurious to the revenue of the United States, than the evils to be apprehended from treating the importer as the person legally liable for the duties on goods, and not the owner, unless he be importer also.

STORY, Circuit Justice. If I thought any thing, which I should decide in this case, would shake in any, the most remote degree, the decision in U. S. v. Lyman [Case No. 15,-647], I should exceedingly regret it, for to that decision, after much consideration, my mind deliberately adheres. But it appears to me, that the present case stands upon wholly independent principles. In the case of U. S. v. Lyman, Mr. Lyman was both owner and consignee at the time when the goods were imported. After the entry of the ship at the custom-house he sold the teas in question, and the purchaser, after the sale, gave a bond at the custom-house for the duties. No question arose there, whether the United States had a remedy against the owner of the goods for the duties, where they had been originally consigned to a third person, who had regularly entered them as consignee, and given a bond for the duties. Upon that question, as at present advised, I should have arrived at a very different conclusion from that, which governed the court in the former case. The revenue collection act of 1799, c. 128, § 36 [1 Story's Laws, 606; 1 Stat. 655, c. 22], provides, that the entry of foreign goods, imported into the United States, shall be made at the custom-house by the owner or owners, consignee or consignees, or, in their absence or sickness, by their known agent or factor; and it prescribes an oath to be taken on that occasion. Before any permit to land the same goods can be obtained, the duties must be paid, or secured to be paid, by the importer, (whether he be owner or consignee,) in the manner prescribed by the 62d section of the same act. If the act had stopped here, there would not seem much room to doubt its real object and purport. Importations might be made by persons resident in the state or district on their own account. They might, on the other hand, be made by such persons, not on their own account, but for the use and benefit of third persons. In each case, the party making the

importation, whether on his own account, or for others, may properly and technically be deemed the importer. It could not have escaped the notice of congress, that the course of trade was to import largely on consignment, sometimes for the use and benefit of a foreign merchant, and sometimes for the use and benefit of a distant domestic merchant. In either case it would be highly inconvenient to require, that the real owners should give bonds for the duties, or that the usual terms of credit in other cases should be withdrawn from them. When, therefore, the act required, that the consignee should enter the goods, and should give bonds for the payment of duties in the same manner as the owner; when, in the same sentence, uno flatu, it treats the consignee as having the same rights and the same responsibility as the owner; when it farther deems the importer the real and original debtor for the duties due on importation; the natural inference is, that, for the purposes of the act, the consignee is deemed the owner, and that he and he alone is the original debtor for the duties.[2] But the act does not leave this to mere inference from general principles of interpretation. It expressly declares, in the close of the 62d section, in order to prevent frauds arising from collusive transfers, "that all goods, &c. imported into the United States, shall, for the purposes of this act, be deemed and held to be the property of the persons to whom the said goods, &c. may be consigned, any sale, transfer, or assignment, prior to the entry and payment, or securing the payment of the duties on the said goods, &c. and the payment of all bonds then due and unsatisfied by the said consignee, to the contrary notwithstanding." So that in respect to the United States and the payment of duties, the consignee is treated as the real owner. How, then, can it be said, that if the consignee, after giving bond with sureties for the duties, should fail, so that the bond should remain unsatisfied, the United States might still elect to proceed against the real owner for the payment of duties, when the act has declared, that the consignee shall be deemed the owner for the purposes of the act? That would be to hold him owner and not owner in the same breath. It appears to me, that when a person is a bona fide consignee, the liability to pay duties attaches to him as importer, and to him only; and that, with reference both to the language and the policy of the act, it matters not, who may be the parties having any ulterior beneficiary interest in the goods. The law looks to the fact of consignment, and recognises the party, who appears as consignee on the manifest and bill of lading and invoice, (which are to govern the entry,) as the substantial owner. It does not choose to trust to the uncertain results of other evidence to establish the true ownership; but it adopts a convenient and easy rule, by which to guide public officers promptly in their duty, as well as parties in their responsibility. Why else is there such solicitude manifested throughout the act upon the subject of consignments? The master is required in his manifest to state the name of the consignee. The original bill of lading and invoice are to be produced and sworn to upon the entry; and the fact is to be stated upon oath, whether the goods are on account of the party or on consignment. But in cases of consignment the name of the actual owner of the goods is not required to be disclosed. If, on the other hand, the entry is by a mere agent or factor, the name of the party, for whom he acts, whether he be owner or consignee, is required to be disclosed.[3] I cannot therefore admit, that, in the case of a genuine bona fide consignment, the owner of the goods, (not being the consignee,) whether he be a foreigner or a domiciled citizen, would, upon the failure of the consignee to pay the bond given for duties, be responsible to the United States therefor. What would be the case, where the consignment was fraudulent, and intended as a cheat upon the United States, it is not necessary to decide. That might perhaps justify the application of other principles.

The argument, then, so far as it is bottomed upon the ground, that the defendant would have been liable to the United States for the duties, if they had remained unpaid, cannot be supported. I agree, that the importer is liable for the duties to the United States; but I cannot agree, that the Messrs. Lewis were not, in the sense of the act of congress, importers, and personally and exclusively liable as consignees for the duties. But if it were otherwise, it would by no means follow, that because the defendant might be personally liable for the duties to the United States, therefore the plaintiff, having paid them, is entitled to recover the amount from the defendant. To justify such a conclusion there must be some privity established between the parties. If the plaintiff had paid the duties, or had become surety on the custom-house bond, at the request of the defendant, that might have raised an implied obligation on his part to indemnify the plaintiff. But the facts of the present case raise no such presumption. The goods were consigned to the Messrs. Lewis; and were entered by them, as consignees, at the custom-house, in the manner authorized and prescribed by law. One of the firm gave his bond for the duties, and the plaintiff became surety on that bond, at the request of the principal in the bond, without any notice to, or any request of the defendant. The plaintiff then became surety, not for the defendant, but for the principal in the bond. When

---

[2] See Attorney General v. Stranyforth, Bunb. 97; Attorney General v. Weeks, Id. 223, 224; U. S. v. Hathaway [Case No. 15,326].

[3] See Act 1799, c. 128, §§ 32, 36, 62. See, also, Attorney General v. Weeks, Bunb. 223, 224.

it was paid it was money paid for the proper debt of the same party. It was in no just sense money paid for the defendant, because he was not a debtor upon the bond, to which the obligation of suretyship attached. He might be beneficially interested in the payment; but that is not sufficient to create a legal obligation to pay it. It makes no difference, that the goods were shipped on account and risk of the defendant, and so appeared upon the bill of lading and invoice produced at the custom-house. That did not, as between the parties to the custom-house bond, make the bond less the proper debt of the consignee. The consignee was still by law required to give the bond, and contract a personal obligation to pay the duties; and the surety was his security for the payment of the same. There was no privity between him and the defendant in respect to that obligation. It is common learning, that, if A owe a debt to B, C cannot, by paying it without A's request or co-operation, create an obligation on the part of A to repay it to him. And if C becomes surety for D, for the proper debt of A, C cannot, by the mere discharge of the debt, entitle himself to recover over against A. The reason, in both cases, is the same. There is no privity between the parties. Neither of these cases is so strong, in point of law, for the defendant, as the present case; for here, the consignees were primarily bound, as consignees, to give the bond, and pay the duties, as a personal debt, to the government, whoever might be ultimately interested to them.

This is the view of the case, which I should be disposed to take upon principle. But there are authorities directly in point. In Tom v. Goodrich, 2 Johns. 213, the goods were imported by a co-partnership at New York; one of the partners gave bonds at the custom-house, with the plaintiff as his surety; the surety paid the bonds, and now brought his suit to recover the amount against the surviving partners. Some objections arose from the form of the declaration. But the court decided against the recovery, mainly upon the ground, that the debt, for which the plaintiff became surety, was the debt of the partner only, who gave the bond, and that a promise to indemnify, and to refund upon payment of the money, ought to be implied only against the partner giving the bond. Mr. Justice Tompkins there said, (and in that opinion my Brother Thompson concurred,) that the law does not imply a promise by all persons, who may be benefited in consequence of payment by a surety, but only by the person, whose debt is thereby discharged. Mr. Chief Justice Kent added, that it would be refining upon the doctrine of implied assumpsits, and going beyond every case, to consider the surety in a bond, as having by that act a remedy at law against other persons, for whom the principal in the bond may have acted as trustee.

That case was stronger than the present; for there the co-partnership were said to be the importers, though it does not appear, from the facts of the case, who were the consignees. I do not meddle with another proposition, stated in that case, that the receiving of the bond of one partner, for a debt of the firm, extinguished the debt of the United States against all the others. Upon that I beg to reserve any opinion until it arises directly in judgment.[4] But I entirely concur in the general doctrine above stated. And it was confirmed by the court in the most ample manner in the case subsequent of Sluby v. Champlin, 4 Johns. 461. There, the supercargo had given bonds at the custom-house, (being, I presume, consignee,) and the surety paid the money; and it was held, that his remedy was against the supercargo only, and not against the owner of the cargo.

There is another ingredient in this case, which would be decisive against the plaintiff; though I am disposed rather to settle the case upon the general principle already stated. It is this, that the Messrs. Lewis originally guarantied the debt, if the rum was sold (as it in fact was) upon credit. This they did before giving bonds at the custom-house. They accordingly, in their account current, treated the duties as a personal debt of their own, and charged the amount against the defendant, as a part payment of the net proceeds of the rum. At all events, they had a lien upon the goods and their proceeds for the amount; and having guarantied the payment, as between them and the defendant, the case is to be considered in the same way, as if they had actually received the proceeds before their failure. Under such circumstances, it is clear, that, if the Messrs. Lewis had actually paid the bonds, they could not recover the amount from the defendant. If so, what ground is there to suggest, that the surety stands upon a better right as against the defendant? If the Messrs. Lewis, as between themselves and the defendant, made the duties their own debt, so as to be entitled to no recourse over against him, how can a surety upon their bond for that debt say, that it is still a subsisting debt in his favour? If extinguished between the consignees and the defendant, how can it be revived as to the surety? If the defendant had paid the amount to the consignees before the bond became due, where would there be any equity or law to support the claim of the surety? But I wish to have it considered, that I put the decision upon the general principle, independent of the special circumstance of the guarantee. Upon the whole, my opinion is, that the defendant is, upon the facts, entitled to judgment in his favour.

---

[4] See U. S. v. Lyman [Case No. 15,647]; Attorney General v. Stranyforth, Bunb. 97; U. S. v. Astley [Case No. 14,472]; Ex parte Hunter, 1 Atk. 223, 227.